___ Priority
✓ Send
___ Clsd
___ Enter
___ JS-5/JS-6  /7 0
___ JS-2/JS-3

FILED
CLERK, U S DISTRICT COURT
JUL 18 2000
CENTRAL DISTRICT OF CALIFORNIA
BY         DEPUTY

ENTERED
CLERK, U S DISTRICT COURT
JUL 19 2000
CENTRAL DISTRICT OF CALIFORNIA
         DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETE TAYLOR, SHARRON GADLIN,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN BERNARDINO, OFFICER JAMES ROBERTS, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. CV 99-2138 NM (CTx)<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF PLAINTIFFS' FEDERAL CLAIMS, REMANDING PLAINTIFFS' STATE LAW CLAIMS, AND VACATING AS MOOT PLAINTIFF GADLIN'S MOTION RE STATE LAW CLAIM |

## I  INTRODUCTION

On February 26, 1999, plaintiffs Pete Taylor ("Taylor") and Sharron Gadlin ("Gadlin") filed a complaint against the City of San Bernardino and Officer James Roberts ("Roberts") asserting claims for 1) civil rights violations under 42 U.S.C. § 1983; 2) assault and battery, 3) negligence; 4) negligent employment; 5) intentional infliction of emotional distress; 6) negligent infliction of emotional distress; 7) false arrest and imprisonment; 8) malicious prosecution; and 9) abuse of process.  Plaintiffs alleged federal question jurisdiction under 28 U.S.C. § 1343, which confers jurisdiction over any civil action brought "[t]o redress the deprivation, under color of State law . . . of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress

✓ Docketed
✓ Copies / NTC Sent
NO JS - 5 / JS - 6
___ JS - 2 / JS - 3
___ CLSD

JUL 19 2000

48

providing for equal rights" or to recover damages or other relief under any federal civil rights law Compl ¶ 1; 28 U.S.C §§ 1343(3), 1343(4). Defendants filed an Answer on May 19, 1999, and an Amended Answer on September 13, 1999 On January 20, 2000, Defendants filed the instant motion for summary judgment of Taylor's Section 1983 claims.[1] Defendants argue that summary judgment is appropriate because there is no dispute of material fact concerning whether the acts that form the basis of Taylor's Section 1983 claims occurred "under color of law."

Upon full consideration of the moving, opposition, and reply papers, the parties' arguments and authorities, and the entire record herein, the court <u>grants</u> summary judgment in favor of Defendants on the ground that Roberts was not acting under color of law when he committed the acts giving rise to Taylor's Section 1983 claims for excessive force and malicious prosecution.

## II.. RELEVANT FACTUAL BACKGROUND[2]

Roberts is a member of the City of San Bernardino police force. On September 23, 1998 at 10:30 p.m., Roberts was on his way home following the end of his shift, when he stopped at Tom's Burger in Moreno Valley in Riverside County His intention was to purchase food and take it home He was off duty, dressed in civilian attire, and driving his own vehicle. Roberts had ordered his food from the drive-through window and was waiting in his car when he perceived Taylor and three other men approaching the restaurant. Taylor ran toward

---

[1] Defendants brought a separate motion for summary judgment of Gadlin's claims. Gadlin does not oppose Defendants' motion for summary adjudication of his malicious prosecution, negligent employment, false arrest and false imprisonment, and abuse of process claims. He does, however, oppose summary adjudication of his negligent infliction of emotional distress claim. Pl. Gadlin's Notice of Non-Opp., at ii.

[2] Unless otherwise noted, the following facts are undisputed.

2

Roberts' car, which was still in the drive-through lane. Taylor slowed as he reached the driver's side window of Roberts' car. Roberts claims that he saw Taylor reach into his waistband and he heard Taylor use a term associated with street gangs. Roberts Decl. ¶ 4. Roberts removed his department-issued gun from a fanny pack around his waist and fired three shots at Taylor.

After the shooting, Roberts identified himself as a police officer and attempted to subdue Taylor using a police technique. Roberts depo., at 53. Roberts ordered Taylor's companions to put their hands where he could see them. Gadlin depo., at 36-37 (Opp., Exh. 3); Roberts depo., at 67 (Opp., Exh. 1). He then told the restaurant employees that he was a police officer and asked them to call 9-1-1. When they did not respond to his request, he called 9-1-1 and identified himself as an off duty police officer.[3] The Moreno Valley police arrived minutes later. Roberts recounted the events to Deputy Plata of the Moreno Valley Police Department.[4]

San Bernardino Police Department policy permits, but does not require, an off duty officer to carry a gun and exercise his official powers. Section 4.09 of the San Bernardino Police Department Policy and Procedures Manual provides that off duty officers may take appropriate action "on any police matter coming to their attention." Roberts' Decl., Exh. B. An off duty officer who takes police action outside of his department's jurisdiction must either 1) receive prior approval from

---

[3] In the 9-1-1 call, Roberts explained to the dispatch operator that he was an "SBPD" police officer and described himself so that police arriving on the scene would not mistake him for Plaintiffs: "I'm wearing black shorts, I'm a black male and I have a white tee shirt on . . . . Make sure the units don't kill me . . . ." He further instructed dispatch to "[l]et them know I have my weapon." 9-1-1 Transcript, at 2-3 (Opp., Exh. 7).

[4] Plata's version of Roberts' statement appears in the Riverside County Sheriff's report of the incident. Taylor's Opp., Exh. 6.

the chief law enforcement officer of that jurisdiction, or 2) observe the commission of a serious crime and perceive an immediate danger to himself or others. Id.

After the shooting, Taylor was arrested and charged by the Riverside County District Attorney's office with attempted carjacking in violation of Cal. Penal Code § 215. A preliminary hearing was held October 16, 1998. Roberts Decl., Exh. C. Roberts was the People's main witness at the hearing. Id. Based on his testimony, the court found probable cause and ordered Taylor held over for arraignment. Id. The Riverside County District Attorney subsequently declined to prosecute Taylor. As a result, the charges against him were dropped and he was released from police custody on December 4, 1998.

## VI. DISCUSSION

### A. Summary Judgment Standard

Defendants now move for summary judgment of Plaintiffs' Section 1983 claims. Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corporation v. Catrett, 477 U.S. 317, 327 (1986)(quoting Fed. R. Civ. P. 1). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a trilogy of 1986 cases, the Supreme Court clarified the applicable standards for summary judgment. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electrical Industry Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Anderson, 477 U.S. at 256. The governing substantive law dictates whether a fact is material; if

4

the fact may affect the outcome, it is material. See id. at 248. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, it must satisfy its burden with affirmative, admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The moving party need not disprove the other party's case. See Celotex, 477 U.S. at 325.

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When assessing whether the non-moving party has raised a genuine issue, the court must view the evidence in the light most favorable to the non-movant. See Anderson, 477 U.S. at 255 (citing Adickes v. S.H. Kress and Company, 398 U.S. 144, 158-59 (1970)). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient to create a genuine issue of material fact. Id. at 252. As the Supreme Court explained in Matsushita,

> [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

475 U.S. at 586-87 (citations omitted).

To be admissible for purposes of summary judgment, declarations or affidavits must be based on personal knowledge, set forth "such facts as would be admissible in evidence," and show that the declarant or affiant is competent to

5

testify concerning the facts at issue. Fed. R. Civ. P. 56(e). Declarations on information and belief are insufficient to establish a factual dispute for purposes of summary judgment. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122 (1st Cir. 1999) (reversing grant of summary judgment because a reasonable jury could conclude that defendant, an off-duty police officer accused of excessive force, exercised state authority).

### B. Section 1983 Claims

Section 1983 creates a federal cause of action against any person who acts under color of law to deprive another of "any rights, privileges, and immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Thus, for Section 1983 liability to attach, defendant must have acted "under color of law." Id.; Huffman v. County of Los Angeles, 147 F.3d 1054 (9th Cir. 1998). "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of [the state], is action taken 'under color of' state law." United States v. Classic, 313 U.S. 299, 326 (1941). An off duty officer acts under color of law only if his actions are "in some way 'related to the performance of his official duties.'" Van Ort v. Estate of Stanewich, 92 F.3d 831, 838 (9th Cir. 1996) (quoting Martinez v. Colon 54 F.3d 980, 986 (1st Cir. 1995)).

1. Excessive Force

Defendants move for summary judgment of Plaintiffs' excessive force claim on the ground that Roberts did not act under color of law when he shot Taylor. Mot., at 3. Courts consider a variety of factors to determine whether an off duty police officer acts under color of law, including. 1) existence of a department policy requiring officers to be on duty at all times; 2) defendant's statements or conduct identifying himself as a police officer, 3) defendant's use of a service

revolver[5] or other department-issued weapon or device; 4) the nature of the conduct at issue. See 1A Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Claims and Defenses § 5.5, at 496 n.73 (2d ed. 1997) & Supp., at 185-88 (3d ed 2000) (collecting cases) [hereinafter Schwartz & Kirklin] ; see also Isidore Silver, Police Civil Liability § 8.04, at 8-48.6 & n.5 (same) [hereinafter Silver]. Thus, an off duty officer "who purport[s] to exercise official authority by, for example, flashing a badge, or carrying a service revolver, or placing an individual under arrest" may be subject to civil liability under Section 1983. Schwartz & Kirklin § 5.5, at 496; see also Silver, § 8 04, at 8-48.6. By contrast, off duty officers "engaged in purely personal disputes" do not act under color of law. Parrilla-Burgos v. Hernandez-Rivera, 108 F.3d 445 (1st Cir 1997) (off duty police officer who shot and killed a man in a private altercation did not act under color of law even though he told his victim "I'm a cop," flashed his badge to onlookers, and used a department issued gun).

It is undisputed that prior to the shooting, Roberts did nothing to invoke his authority as a police officer. He was off duty, outside his jurisdiction, in civilian clothes, and behind the wheel of his own car. Moreover, he did not issue any commands or identify himself as an officer Defendants urge the court to confine its analysis to these facts: "None of [Roberts'] actions before or during the shooting were those of a police officer His actions after the fact are irrelevant." Mot., at 16. Taylor, however, asserts that Roberts' conduct after the shooting is highly probative and creates a genuine issue of material fact regarding whether Roberts acted under color of law. Specifically, after the shooting, Roberts identified himself as a police officer, ordered Taylor to stay in a prone position, commanded Taylor's three companions to keep their hands where he could see

---

[5] Use of a service revolver alone is insufficient basis for Section 1983 liability. See Parrilla-Burgos v. Hernandez-Rivera, 108 F.3d 445 (1st Cir. 1997).

7

them, asked restaurant employees to call 9-1-1, reported the incident to local law enforcement authorities; and did not leave the scene until the authorities arrived.[6]

Taylor relies on Huffman v. City of Los Angeles, 147 F.3d 1054 (9th Cir 1998), to support his contention that events occurring after the shooting are relevant. Huffman dealt with a fatal shooting committed by a drunken deputy during a barroom brawl. On the evening of the shooting, Kirsch, the deputy, was off duty and out of uniform; he used his own weapon; and he neither identified himself as a sheriff's deputy nor "issued any commands to Huffman." Id. at 1058 After considering the totality of the circumstances, the court concluded that Kirsch did not act under color of law. Id. Although the Huffman court examined the facts of the incident "in their totality," it did not explicitly consider events after the shooting. 147 F.3d at 1058. Nor did the Huffman court hold that such evidence is always relevant.

Here, the relevant facts are those pertaining to the challenged conduct. Because the shooting is the basis for Taylor's excessive force claim, the relevant focus of the court's inquiry for determining whether Roberts acted under color of law is the shooting itself and the conduct leading up to it. Specifically, the court inquires whether the alleged excessive force "was an abuse or misuse of power conferred upon [the officer] by state authority." Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994).

Taylor argues that Roberts' "post-shooting behavior clearly demonstrates

---

[6] Taylor makes much of the fact that Roberts did not leave the scene, but it is customary for potential witnesses to await the arrival of law enforcement authorities so they can make a statement. In fact, Section 4.09 of the San Bernardino Police Department Policy and Procedures Manual provides that circumstances may require that an off duty officer accurately observe events and "becom[e] an effective witness or informant." Roberts Decl., Exh. B. Here, the police would naturally want to question Roberts, a key witness to the events.

8

that he shot Pete Taylor pursuant to his efforts to arrest Taylor and his friends." Opp., at 21. The facts do not warrant such a conclusion. Moreover, the relevant inquiry is not the officer's subjective intent, but whether he displayed any objective indicia of police power. Aside from Roberts' use of his duty weapon, the shooting itself is devoid of any objective indicia of state authority.

Even if the court considered Roberts' post-shooting conduct, it would not find a triable issue of material fact. Roberts' actions after the shooting are consistent with his purported belief that he was the victim of an attempted carjacking. Roberts did not attempt to arrest Taylor or his friends after the shooting. Instead, he waited for local law enforcement authorities to arrive. Roberts was dressed in plain clothes, so he identified himself as a police officer to reassure alarmed bystanders and protect himself. He called 9-1-1 and reported the incident to police.

Roberts did not in any way rely on his status as a police officer to deprive Taylor of his right to be free from excessive force. See Van Ort, 92 F.3d at 838 (rejecting plaintiff's argument that officer "used his status and privileges as a law enforcement officer to . . commit his crime."); compare Inouye v. County of Los Angeles, 30 Cal. App. 4th 278 (1994) (officer twice identified himself as a police officer, gave orders, and attempted to arrest plaintiff before shooting). Because there is no factual dispute which, if resolved in Plaintiffs' favor, could result in a finding that Roberts acted under color of state law, Defendants are entitled to summary judgment on Plaintiffs' excessive force claim.

2. Malicious Prosecution

"[T]he tort of malicious prosecution . . . constitutes procuring the arrest or prosecution of another under lawful process . . . from a malicious motive and without probable cause." Asgari v. Los Angeles, 15 Cal.4th 744, 753-54 (1997) To prevail on a claim for malicious prosecution, plaintiff must prove that:

(1) Defendant "instituted [or was] the moving force" behind criminal

9

prosecution of plaintiff;

(2) The proceeding was initiated without probable cause;

(3) Defendant acted with malice, "although actual ill will towards the plaintiff is not necessary";

(4) The proceeding terminated in plaintiff's favor;

(5) Plaintiff's suffered damages as a result.

Silver § 7.01. "The tort of malicious prosecution is disfavored in law since liability runs counter to the substantial social concern of identifying and bringing to justice all potential criminals." Id. § 7.01, at 7-3 (parenthetical omitted).

### a. City of San Bernardino

The County of Riverside—not the City of San Bernardino—charged Taylor with attempted carjacking. Hence, the City of San Bernardino neither "instituted [or was] the moving force" behind the criminal prosecution. Because the City of San Bernardino did not prosecute Taylor for attempted carjacking, Taylor's state and federal malicious prosecution claims against the City of San Bernardino must fail.[7]

### b. Roberts

Plaintiffs' claim for malicious prosecution does not arise from Roberts' testimony as a witness at the preliminary hearing[8] but rests on the allegation "that

---

[7] Taylor does not oppose summary judgment of his malicious prosecution claim against the City of San Bernardino.

[8] As Defendants point out in their moving papers, witness immunity extends to police officers. Mot., at 18 (citing Briscoe v. LaHue, 460 U.S. 325 (1983)). However, unlike ordinary witnesses, "complaining witnesses" are not absolutely immune from civil liability. See Malley v. Briggs, 475 U.S. 335, 340-41 (1986) (immunity does not extend to police officers sued under Section 1983 for wrongfully initiating a criminal proceeding by applying for an arrest warrant); see also White v. Frank, 855 F.2d 956(2d Cir. 1988); Anthony v. Baker, 955 F 2d 1395 (10th Cir. 1992). "The term 'complaining witness' describes the person (or

10

Roberts deliberately submitted false statements in police reports, which led to a criminal prosecution brought without probable cause."[9] Opp., at 24. Defendants advance two arguments in support of their motion for summary judgment of Plaintiffs' federal malicious prosecution claim against Roberts: lack of a predicate constitutional deprivation, and absence of state action.

    1. Constitutional Deprivation

"Malicious prosecution, normally a state law cause of action, rises to a constitutional due process violation only where the prosecution is conducted with the intent to deprive a person of a constitutional right." McCarthy v. Mayo, 827 F.2d 1310, 1315 (1987). Defendants contend that Plaintiffs' federal malicious prosecution claim must fail because: 1) it is uncertain whether such a claim exists

---

persons) who actively instigated or encouraged the prosecution of the plaintiff." Anthony v. Baker, 955 F.2d at 1399 n.2.

    In White, an arresting officer's "role as a complaining witness render[ed] him liable to the victim under section 1983." 855 F 2d at 861. Similarly, in Harris v. Roderick, 126 F.3d 1189 (9th Cir. 1997), 522 U.S. 1115, 118 S.Ct. 1051 (1998), the Ninth Circuit denied immunity to police officers who falsely testified before a grand and petit jury because they functioned as complaining witnesses. "The exercise of independent judgment by the public prosecutor and his active role in initiating criminal prosecutions may decrease the likelihood that a complaining witness will be considered to have caused or procured the prosecution." White, 855 F.2d at 962

    The evidence suggests that Roberts is in fact a "complaining witness "

[9] Defendants counter that no such police report exists; all of Roberts' communications with law enforcement authorities concerning the alleged carjacking attempt were oral. Opp., at 5; Roberts Supp. Decl. ¶ 1. The court finds little significance in the form of these communications. In their Complaint, Plaintiffs do not specify whether Roberts' statements to law enforcement authorities were oral or written. Plaintiffs allege in the Complaint that Roberts provided false information regarding the incident to the reporting and investigating officers. Compl., at ¶¶ 12-13. They further allege that at the time he made such statements, Roberts knew they were untrue. Id.

11

after the Supreme Court's decision in Albright v. Oliver, 510 U.S. 266 (1994); and 2) Plaintiffs have not alleged the necessary predicate for a pre-Albright claim—deprivation of a federal constitutional right. Opp., at 19; Reply, at 5.

Pre-Albright authority recognized a federal claim for malicious prosecution. See White v. Frank, 855 F.2d 956, 961 n.5 (2d Cir. 1988) ("There can be no question that malicious prosecution can form the basis for imposition of liability under section 1983."). Albright held only that a Section 1983 action for false arrest may not be based on substantive due process. 510 U.S. 266. However, in Albright, the Supreme Court left unclear whether another constitutional ground for a malicious prosecution claim under Section 1983 is available. See Haupt v. Dillard, 17 F.3d 285, 290 n.4 (9th Cir. 1994) ("The constitutional foundation for a claim of malicious prosecution under Section 1983 is a matter of dispute.").

Although the Ninth Circuit has not yet spoken on the issue, other circuit courts have read Albright to permit a federal cause of action for malicious prosecution where plaintiff has been deprived of Fourth Amendment rights. See Murphy v. Lynn, 118 F.3d 9947 (2d Cir. 1997), cert. denied, 118 S.Ct. 1051 (1998); Kerr v. Lyford, 171 F 3d 330, 339 (5th Cir. 1999); Washington v. Summerville, 127 F.3d 552, 558 (7th Cir. 1997), cert. denied, 118 S.Ct. 1515 (1998); Taylor v. Meachem, 82 F 3d 1556 (10th Cir.), cert. denied, 117 S.Ct. 186 (1997); Uboh v. Reno, 141 F.3d 1000 (11th Cir. 1998), see generally Schwartz & Kirklin, Supp. § 3.20, at 127-33 (collecting cases). Moreover, at least one court has found a Fourteenth Amendment basis for a federal malicious prosecution claim: "[M]alicious prosecution can result in imprisonment, which is likewise a deprivation of liberty within the confines of the Due Process Clause " Spiegel v. Rabinovitz, 121 F.3d 251, 255 (7th Cir. 1997), cert. denied, 118 S.Ct. 565 (1997).

In their Complaint, Plaintiffs invoke proper constitutional grounds for the malicious prosecution prong of their 1983 claim: the Fourteenth Amendment right to liberty and the Fourth Amendment guarantee of freedom from

12

unreasonable search and seizure. Compl., ¶¶ 17, 25. Furthermore, the facts lend substance to these allegations. Taylor was arrested and charged with attempted carjacking. He spent nearly ten weeks in jail pending resolution of the attempted carjacking charges. Frank Decl. ¶¶ 2-4 (Opp., Exh. 5). If proven the result of efforts to conceal the true facts of the shooting, Taylor's arrest and lengthy incarceration could constitute an unreasonable seizure under the Fourth Amendment and/or a Fourteenth Amendment deprivation of liberty without due process of law. Plaintiffs have sufficiently alleged a constitutional foundation for their federal malicious prosecution claim.

ii. State Action

Defendants maintain that there is no state action on which to base a federal malicious prosecution claim because Roberts discussed the incident with City of Moreno Valley police and with the Riverside County District Attorney's office in his private capacity only. Mot., at 19; Reply, at 4-5. "To state a cause of action under 42 U.S.C. § 1983 . . . the challenged conduct must constitute state action." Scott v. Hern, No. 98-1320, 2000 WL 726442 (10th Cir. June 6, 2000). Conduct of a private individual is "fairly attributable to the state" if the private party acted in concert with or "obtained significant aid from state officials or engaged in conduct otherwise attributable to the state." Id. (internal citations omitted). The state action requirement is satisfied when an individual acts under color of state law. An act is committed under color of state law when it is "made possible only because the wrongdoer is clothed with the authority of state law." Hughes v. Meyer, 880 F.2d 967, 971 (7th Cir. 1989) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)) However, "an individual does not act under color of state law merely by supplying false information to an arresting officer." Yeksigian v. Nappi, 900 F.2d 101, 104 (7th Cir. 1990); cf. Scott, 2000 WL 726442, at *4 ("A private individual does not engage in state action simply by availing herself of a state procedure.").

13

state procedure.").

Where a government official abuses his/her position of authority, courts are likely to find the official acted under color of law. Thus in Yeksigian, a supervisor of a municipal agency, while on the job, called police and had an employee arrested by submitting a complaint making false accusations against the employee. The supervisor's actions were ratified by his co-defendant, the deputy commissioner of the agency. Concluding that the defendants had allegedly "abused their authority .. to secure without justification the arrest of an employee under their supervision," the Seventh Circuit found defendants had acted under color of law. Id at 104.

It is clear, however, that "[n]ot every action by a state official or employee is to be deemed as occurring 'under color' of state law." Hughes v. Meyer, 88 F.2d 967, 971 (7th Cir. 1989). In Hughes, a game warden with the state Department of Natural Resources (DNR), entered plaintiffs' land to investigate complaints of illegal hunting. When he encountered plaintiffs, the warden identified himself and stated his purpose. When plaintiffs, armed with rifles, became aggressive, the warden called law enforcement authorities for assistance. Id. at 968. Plaintiffs were arrested and charged with false imprisonment. Id. at 969 The Hughes court held that the warden did not act under color of law in reporting the confrontation, reasoning that

> ... Buss's acts of describing his encounter with the Hughes' brothers was [sic] functionally equivalent to that of any private citizen reporting to the police the details of an alleged criminal act. His status as a DNR official did not clothe him with greater authority to make statements to the police about the occurrence than any other citizen would possess.

Id. at 972.

It is undisputed that Taylor was prosecuted in Riverside County—not in San Bernardino, where Roberts works. Defendants argue that Roberts' cooperation

with Riverside authorities was outside the scope of his employment, and thus, not "under color of law." Mot., at 19 (citing King v. Massarweh, 782 F.2d 825, 828-29 (9th Cir. 1986) ("[A]bsent some showing that a private party had some control over state officials' decision to arrest a person or search his residence, the private party did not proximately cause the injuries stemming from the arrest and search.")). Defendants further offer Roberts' statement that he neither arrested nor attempted to arrest Taylor or his companions on the day of the incident, and that his communications with Moreno Valley and Riverside County law enforcement authorities were entirely oral. Roberts' Supp. Decl. ¶¶ 1-2. Taylor provides no admissible evidence to rebut or contradict Roberts' claim that in describing the incident to police, he was acting in his private capacity as a witness—not in his official capacity as a peace officer.

Thus, assuming arguendo that Roberts gave knowingly false information to arresting officers, and that it was reasonably foreseeable that such falsehoods would lead to Taylor's unlawful detention and wrongful prosecution, Plaintiffs have failed to show that Roberts abused his authority or conspired with state officials to procure Taylor's arrest and prosecution. See Scott, 2000 WL 726442, at *4-5 (finding plaintiff's conclusory allegations that state officials conspired with private defendants to involuntarily commit her insufficient to establish state action); Mastroianni v. Bowers, 173 F.3d 1363, 1368 (11th Cir. 1999) (finding plaintiff adduced insufficient evidence to support his claim that defendant, a Georgia Bureau of Investigation agent, conspired with others to present false evidence leading to plaintiff's arrest and prosecution). Like the warden in Hughes, Roberts' employment status "did not clothe him with greater authority to make statements to the police about the occurrence than any other citizen would possess." 880 F.2d at 972. Because Plaintiffs have failed to adduce sufficient evidence to create a genuine issue of material fact on the state action element of

15

their federal malicious prosecution claim,[10] Defendants are entitled to summary judgment on that count

### C. Plaintiffs' State Law Claims

Defendants move to dismiss Plaintiffs' state law claims on the ground that there is no basis for federal jurisdiction after summary judgment of Plaintiffs' Section 1983 claims. Mot., at 19. In their Reply, however, Defendants cast their motion to dismiss Plaintiffs' state law claims as a motion to remand. Furthermore, Defendants represent that Plaintiffs do not oppose remand of their state law claims once the federal claims are resolved. Reply, at 6. The court may dismiss or remand pendent state law claims once it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because the court has disposed of Plaintiffs' federal claims and the parties have agreed to pursue their remaining claims in state court, the court remands Plaintiffs' state law claims pursuant to its authority under 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiff Gadlin's motion for summary judgment of his state law claim is vacated as moot.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment of Plaintiffs' Section 1983 claims is granted.

IT IS SO ORDERED.

DATED: July 17, 2000

Nora M. Manella
United States District Judge

---

[10] Because the court finds that Roberts did not act under color of law in describing the shooting incident to prosecuting authorities, it follows that Roberts would not be immune from liability in a state action for malicious prosecution based on the same set of facts. See Cal. Gov't Code § 821.6.